T.C. Memo. 2014-209

UNITED STATES TAX COURT

DOUGLAS W. LUNDY AND RENITTA H. LUNDY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29616-13L.                    Filed October 8, 2014.

Ps filed a return for 2011, included in income P-H's wages and
P-W's net profit from self-employment, and reported both regular
income tax and self-employment tax. Ps did not pay any part of the
tax either before, with, or after the filing of the return. R now
proposes to collect by levy Ps' outstanding liability.

Ps challenge the existence of the underlying liability on the
ground that P-H's disability retirement income, which R conceded in
a prior redetermination action for 2005 was excludable from income,
served to capitalize P-W's proprietorship, thereby rendering P-W's
net profit nontaxable.

<u>Held</u>: No part of P-W's net profit from self-employment is
excludable from Ps' income, nor is any part of P-H's wages.

<u>Held</u>, <u>further</u>, R may proceed with the proposed collection
action.

[*2]   Douglas W. Lundy and Renitta H. Lundy, pro sese.

Laura A. Price, for respondent.


MEMORANDUM OPINION


ARMEN, Special Trial Judge:  Petitioners commenced this case for judicial review of a Notice Of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  See sec. 6330(d)(1).  In the notice of determination, respondent's Appeals Office sustained a proposed levy to collect petitioners' outstanding income tax liability for 2011.  Pending now before the Court is respondent's motion for summary judgment, filed pursuant to Rule 121.  Petitioners oppose the granting of respondent's motion.

## Background

The following is a summary of relevant facts that are not in dispute.  These facts are stated solely for the purpose of deciding the pending motion for summary judgment and are not findings of fact for this case.  See Estate of Roski v. Commissioner, 128 T.C. 113, 115 (2007); see also Estate of Kahn v.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Commissioner, 125 T.C. 227, 228 (2005) (citing Fed. R. Civ. P. 52(a) and Lakewood Assocs. v. Commissioner, T.C. Memo. 1995-552).

Petitioners resided in the State of Florida at the time that the petition was filed with the Court.

As previously stated, the instant case was commenced by petitioners challenging a proposed levy to collect their outstanding liability for 2011. However, to understand petitioners' position, we must begin with their prior case in this Court.

Petitioners' Case at Docket No. 27549-07S for 2005

In November 2007 petitioners commenced an action for redetermination at docket No. 27549-07S challenging a notice of deficiency for 2005. See sec. 6213(a). In that notice respondent determined a deficiency in petitioners' income tax and an accuracy-related penalty for 2005. Respondent's deficiency determination was based solely on $42,181 of retirement income that had been reported by a third-party payor on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance, Contracts, etc., for 2005, but had been excluded from gross income by petitioners on their 2005 return. Petitioners alleged in their petition that the amount received, which

**[\*4]** apparently represented disability retirement benefits received by petitioner Douglas W. Lundy, was "fully exempted [sic] from taxes".

The case at docket No. 27549-07S was resolved pursuant to agreement of the parties, and a stipulated decision was entered by the Court (per Chief Judge John O. Colvin) on April 4, 2008. The stipulated decision was typically terse, reciting only that "pursuant to agreement of the parties" there was no deficiency in income tax due from, nor overpayment due to, petitioners for 2005, nor was any penalty due from them for that year. The stipulation page of the stipulated decision, which the parties signed, was likewise terse, stating in its entirety (using standard and customary language for this type of case) only the following: "It is hereby stipulated that the Court may enter the foregoing decision in this case."

Neither party filed any post decision motion, see Rule 162, and the stipulated decision became final in due course, see sec. 7481(b).

Origin of Petitioners' Tax Liability for 2011

Petitioners timely filed a joint Federal income tax return for 2011. On it, Mr. Lundy listed his occupation as "bus driver" and petitioner Renitta H. Lundy listed her occupation as "general contractor". On their return petitioners reported total income of $31,309, consisting of (1) wages of $11,983 received by Mr. Lundy from the Leon County School Board in Tallahassee, Florida, and

[*5] (2) business income of $19,326 received by Mrs. Lundy. Regarding the latter, petitioners attached to their return a Schedule C, Profit or Loss From Business (Sole Proprietorship), identifying Mrs. Lundy as the proprietor and reporting net profit of $19,326, which amount represented the difference between gross income of $146,067 and total expenses of $126,741. Finally, as relevant, petitioners reported on their return total tax of $3,467, consisting of "regular" income tax of $1,093 and self-employment tax of $2,374, plus an estimated tax penalty of $69, for a total reported liability of $3,536 for 2011. See secs. 1(a)(1), 1401(a) and (b), 6654(a).

Petitioners paid no estimated tax for 2011, nor was any income tax withheld from Mr. Lundy's wages for that year. Further, petitioners did not enclose any remittance with their 2011 return, nor did they pay any part of their reported liability after filing their return.

Respondent assessed the tax and the estimated tax penalty as reported by petitioners on their 2011 return, together with an addition to tax for failure to timely pay and statutory interest, see secs. 6651(a)(2), 6601(a), and sent petitioners a notice and demand for payment ("statutory notice of balance due"), see sec. 6303(a). As previously stated, petitioners did not pay any part of the amount due.

[*6] Final Notice of Intent To Levy

On April 27, 2013, respondent sent petitioners a Final Notice Of Intent To Levy And Notice Of Your Right To A Hearing, see sec. 6330(a), in respect of their outstanding liability for 2011.  Petitioners responded by filing a Form 12153, Request For A Collection Due Process Or Equivalent Hearing (CDP hearing).  In it, petitioners did not propose any collection alternative, nor did either of them seek so-called innocent spouse relief; rather, petitioners challenged their underlying liability.  In that regard, petitioners attached to Form 12153 a letter dated May 17, 2013, which stated in part as follows:

> The funds that you are attempting to collect from are indeed part of my total and permanently [sic] disability benefits which were subject of the UNITED STATES TAX COURT CASE # 27549-07S * * *. We filed a timely appeal to the U.S. TAX COURT and laid out all of our affirmative defenses to the Commissioner of the Internal Revenue Service claims at that time.  The most important claim that we made at that time is that whatever we funded, financed, and paid for with my total and permanently [sic] disability funds which were determined by this order to be non-reportable, tax free, and tax exempt from the clutches of the IRS was also off limits from the IRS. * * *
>
> * * * The IRS COMMISSIONER gave up any rights to any amount of taxes, which are directly or indirectly due from my tax free, tax exempt benefits.
>
> So in closing, if your agency illegally violates Judge John O. Colvin's Order that your IRS COMMISSIONER FREELY and VOLUNTARILY ENTERED into and attempt [sic] to seize any of

**[*7]** our protected property and monies, than we will see your agency back in TAX COURT IN FRONT OF CHIEF JUDGE JOHN O. COLVIN to explain your actions.  [Reproduced literally.]

In addition to this letter, petitioners also attached to Form 12153 a letter that had been sent to respondent by Mr. Lundy on October 20, 2012.  This second letter states in part as follows:

> ANY PROPOSED SEIZURE OF WAGES AND PROPERTY WOULD BE IN VIOLATION OF THE COURT ORDER SIGNED BY JUDGE JOHN O. COLVIN ON APRIL 4, 2008.
>
> FROM ALL OF THE RELEVANT INFORMATION THAT WAS RECEIVED BY THE U.S. TAX COURT WHEN WE FILED OUR APPEAL ABOUT THE PROPOSED CHANGES TO OUR 2005 TAX RETURN BY YOUR ORGANIZATION WHICH WAS GIVEN TO YOUR ORGANIZATION BY THE TAX COURT, THE ATTORNEY'S FOR YOUR ORGANIZATION OPTED NOT TO COME TO TALLAHASSEE, FLORIDA TO FEDERAL COURT TO LITIGATE THEIR STANCE ABOUT OUR TAXABLE STATUS.
>
> WHAT THIS ORDER DOES IS MAKE EVERYTHING THAT WE SPEND AND FUND WITH MY TOTAL AND PERMANENTLY [sic] DISABILITY FUNDS, FREE FROM ALL TAXATION, ATTACHMENTS, AND FREE FROM ALL LEGAL PROCESSES.
>
> *      *      *      *      *      *      *
>
> ALL OF OUR WORLDLY POSSESSIONS AND ANY FUNDS THAT WE AMASS COMES STRICTLY FROM TAX EXEMPT, NON-REPORTABLE FUNDS WHICH YOUR ORGANIZATION AGREED TO.  [Reproduced literally.]

**[*8]** <u>Administrative Developments</u>

During the administrative stage of this case petitioners continued to challenge the existence of their underlying liability. Petitioners did not request a collection alternative such as an installment payment agreement or an offer-in-compromise, nor did they furnish the requisite financial information that might support a collection alternative. In addition, neither petitioner raised a spousal defense.

<u>Commencement of Judicial Action</u>

On November 18, 2013, respondent's Appeals Office sent petitioners a notice of determination sustaining the proposed levy in respect of petitioners' outstanding income tax liability for 2011. <u>See</u> sec. 6330(b) and (c). In response petitioners timely filed a petition with this Court. <u>See</u> sec. 6330(d)(1); Rules 330-334. In it, they state that Mr. Lundy "retired as a Fire Captain under total and permanent disability under Florida law", and they explain their disagreement with respondent's collection determination as follows:

(1) Because of the Tax Order 27549-07S.
(2) The Above order was about Total & Permanently Disability monies that is not income to be reported to IRS. These funds are completely free from taxes and attachment/Garnishment.
(3) When The above case was filed, we stated at that time that any

**[*9]** thing we funded with those funds were completely tax free also. The IRS did not raise any issues with that statement. [Reproduced literally.]

Motion for Summary Judgment

After the case was at issue, respondent filed his motion for summary judgment. See Rules 38, 121(a). In his motion respondent contends that the Appeals settlement officer who conducted the administrative hearing properly sustained the proposed collection action. Respondent also contends that the settlement officer did not abuse her discretion in not considering a collection alternative because petitioners neither requested one nor furnished the requisite financial documentation.

Petitioners oppose the granting of respondent's motion. They argue that the stipulated decision entered at docket No. 27549-07S on April 4, 2008, served to exempt from tax any income earned through the use or investment of Mr. Lundy's disability retirement payments.

In rebuttal to petitioners' objection, respondent points out that he is not seeking to tax any disability income that Mr. Lundy may have received in 2011; rather, he only seeks the liability that petitioners themselves reported on their 2011 return in respect of Mr. Lundy's wages and Mrs. Lundy's net profit from self-employment. Insofar as the proposed levy is concerned, respondent acknowledges

**[*10]** that section 6334 exempts from levy various types and amounts of property, and he asserts that "[r]espondent has not even identified any property that * * * [he] might levy in order to satisfy petitioners' outstanding 2011 income tax liability."

In reply to respondent's rebuttal, petitioners contend that section 6334 "does not come into play" because of the aforementioned stipulated decision.

## Discussion

### I. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine dispute of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v.

[*11] Commissioner, 85 T.C. 812, 821 (1985); Barker v. Commissioner, T.C. Memo. 2002-13.

After carefully reviewing the record, the Court is satisfied that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Accordingly, respondent's motion for summary judgment shall be granted.

II. Administrative Hearings Under Section 6330 and Judicial Review

Section 6331(a) authorizes the Commissioner to levy on property and rights to property of a taxpayer who is liable for taxes and who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made only if the Commissioner has given notice to the taxpayer no less than 30 days before the day of the levy.

Section 6330(a) reiterates the requirement of notice before levy and confers on the taxpayer the right to request a prelevy administrative hearing. Sec. 6330(a)(3)(B), (b); see Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000). If such a hearing is requested, the hearing is to be conducted by the IRS Office of Appeals. Sec. 6330(b)(1).

**[*12]** At an administrative hearing the taxpayer may raise any relevant issue, including offers of collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A)(iii). A taxpayer may also challenge the existence or amount of the underlying tax liability but only if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B); see Montgomery v. Commissioner, 122 T.C. 1 (2004).

A determination made by the IRS Office of Appeals under section 6330 to sustain a proposed levy may be reviewed by this Court. Sec. 6330(d)(1); see Rules 330-334. Where the underlying tax liability is properly at issue, the Court reviews the determination de novo. Goza v. Commissioner, 114 T.C. at 181-182. Where the underlying tax liability is not at issue, the determination is reviewed for abuse of discretion. Id. at 182; see also Sego v. Commissioner, 114 T.C. 604, 610 (2000). Because petitioners did not have the opportunity to dispute the liability previously, the Court reviews their underlying liability de novo. See sec. 6330(c)(2)(B); Montgomery v. Commissioner, 122 T.C. 1.

**[*13]** III.  Petitioners' Underlying Tax Liability

A.  Gross Income

Generally, section 61(a) provides that gross income means all income from whatever source derived.  This includes compensation for services, see sec. 61(a)(1), and income derived from business, see sec. 61(a)(2).  Exclusions from income are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).  Without an applicable exclusion, Mr. Lundy's wage income is included in gross income pursuant to section 61(a)(1).  See United States v. Connor, 898 F.2d 942, 943-944 (3d Cir. 1990); Connor v. Commissioner, 770 F.2d 17, 20 (2d Cir. 1985); United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981).  Similarly, without an applicable exclusion, Mrs. Lundy's net business income is included in gross income pursuant to section 61(a)(2).  See Hastings v. Commissioner, T.C. Memo. 2002-310; Cohen v. Commissioner, T.C. Memo. 2001-249.

B.  Petitioners' Contentions

Petitioners do not deny having received either the wages or the business income that they reported on their 2011 tax return and that gave rise to the tax liability that respondent seeks to collect.  Rather, petitioners contend that they invested Mr. Lundy's disability retirement income (which respondent does not

[*14] challenge as nontaxable) in Mrs. Lundy's sole proprietorship and that, as a consequence, income generated by that proprietorship is nontaxable.[2] Or, in petitioners' words: "[A]ny thing we funded with those funds were completely tax free also."

In arguing as they do, petitioners fail to distinguish between an item that is excludable from income and the income that such an item may produce once it is invested. Many items are statutorily excluded from gross income. For example, gross income does not include the value of property acquired by gift or inheritance. Sec. 102(a). In contrast, income generated from property acquired by gift or inheritance does not come within such statutory exclusion. Sec. 102(b)(1). However, if property acquired by gift or inheritance were invested in a tax-advantaged medium, such as State or local municipal bonds, then the income from such investment might be excludable from gross income under a specific statutory provision. See sec. 103(a) and (b).

Similarly, although Mr. Lundy's continuing disability retirement income may be statutorily excludable from gross income (as respondent appears to concede), the investment of the disability retirement income in some enterprise

---

[2] Notably, petitioners make no effort to explain how Mr. Lundy's wages are related to his disability retirement income or why such wages might be nontaxable.

[*15] does not itself serve to exclude from taxation the income generated by that enterprise through its own activities. Rather, any such exclusion would necessitate a specific statutory provision. And in the case of Mrs. Lundy, a U.S. person operating a business in the State of Florida, there is no statutory provision that serves to exempt from gross income the net profit from her proprietorship; to the contrary, her net profit is includible in gross income pursuant to section 61(a)(2).[3]

Petitioners' reliance on the stipulated decision entered in docket No. 27549-07S on April 4, 2008, is misplaced. That decision did nothing other than memorialize respondent's concession that $42,181 of disability retirement income received by Mr. Lundy in 2005 was excludable from petitioners' gross income for that year.[4] Indeed, the only adjustment to income giving rise to the deficiency determined by respondent for 2005 was the omission of that retirement income from petitioners' 2005 return. Necessarily, therefore, the decision could not have spoken--and most assuredly did not speak--to the excludability vel non of business

---

[3] Lest there be any doubt, in the case of Mr. Lundy, a U.S. person performing personal services in the State of Florida, there is no statutory provision that serves to exempt his wages from gross income, which are includible in gross income pursuant to sec. 61(a)(1).

[4] It bears repeating that the excludability of Mr. Lundy's disability retirement income has never been an issue in the instant case.

**[\*16]** income that may have been generated by Mrs. Lundy's proprietorship in 2005 or in any other year.

Further, the Court rejects petitioners' suggestion that the introductory phrase of the aforementioned stipulated decision--"pursuant to the agreement of the parties"--evidences some side agreement of the parties or, more nefariously, some agreement between respondent's counsel and the Court, of which there is none. Rather, the Court ascribes no meaning to such phrase other than that for 2005 respondent agreed to concede the determined deficiency and penalty and petitioners agreed to concede any claim of an overpayment, i.e., that the parties agreed to conclude the litigation without trial or further proceedings. In short, there is nothing to suggest that respondent conceded, or intended to concede, anything other than the deficiency and penalty as determined in the notice of deficiency for 2005. After all, nothing else was justiciable in docket No. 27549-07S. In sum, petitioners' challenge to the existence or amount of their underlying liability for 2011, i.e., the liability that they themselves reported on their own return,[5] is without merit.

---

[5] Petitioners never mounted any challenge to either the addition to tax for failure to timely pay, see sec. 6651(a)(2), or statutory interest, see sec. 6601(a), independent of their challenge to the underlying tax itself.

**[\*17]** IV.  Remaining Matters

Petitioners have not at any time raised spousal defenses.  See secs. 6015, 6330(c)(2)(A)(i).  Thus, any such defense need not be considered.  See Giamelli v. Commissioner, 129 T.C. 107, 114-115 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002).

Similarly, petitioners have not sought a collection alternative, such as an installment agreement or an offer-in-compromise.  See sec. 6330(c)(2)(A)(iii).  It is not an abuse of discretion for the IRS Appeals Office to decline to consider a collection alternative when no specific proposal is ever presented to the settlement officer.  E.g., Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006); Kendricks v. Commissioner, 124 T.C. 69, 79 (2005).  In any event, it is generally incumbent on the taxpayer to provide requisite financial information to support a collection alternative so that the settlement officer may evaluate the taxpayer's ability to pay.  E.g., Kindred v. Commissioner, 454 F.3d at 697; Olsen v. United States, 414 F.3d 144, 151 (1st Cir. 2005); Murphy v. Commissioner, 125 T.C. 301, 315 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Wright v. Commissioner, T.C. Memo. 2012-24.  This petitioners did not do.

Arguably, petitioners may indirectly seek to challenge the appropriateness of the proposed collection action, see sec. 6330(c)(2)(A)(ii), by arguing that

[*18] respondent may not "come and seize Mr. Lundy's State Protected Disability Funds to collect back taxes which those Funds have been off the table from the IRS since the year 2000 and to this present time." However, respondent has not sought to levy on those funds, and the Court need not (and does not) decide in the instant case whether those funds may be exempt from levy under section 6334 or under any other applicable provision of law.[6] Rather, what the Court does decide is that respondent's Appeals Office did not abuse its discretion in sustaining the proposed collection action given petitioners' outstanding liability and their neglect or refusal to pay or otherwise address that liability other than to challenge its existence. Cf. sec. 6321.

Finally, insofar as verification of procedures is concerned, see sec. 6330(c)(1), it is well settled that no particular form of verification is required; that no particular document need be provided to the taxpayer at a hearing conducted under section 6330; and that Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, and transcripts of account may be used to satisfy the requirements of section 6330(c)(1). See Roberts v. Commissioner, 118 T.C. 365,

---

[6] As respondent points out, if the Commissioner should erroneously levy on exempt property, the law provides a variety of administrative and judicial remedies. E.g., secs. 6343(b), 7433; secs. 301.6343-2, 301.7433-1, Proced. & Admin. Regs.

[*19] 371 n.10 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003); Nestor v.

Commissioner, 118 T.C. 162, 166 (2002); Lunsford v. Commissioner, 117 T.C.

183 (2001). The transcripts and materials that are attached as exhibits to

respondent's motion for summary judgment and the accompanying declaration,

together with the statements of the Appeals settlement officer in such declaration

as well as in the attachment to the notice of determination, demonstrate that

required assessment and collection procedures were followed.

V. Conclusion

Drawing all factual inferences against respondent, the Court concludes that

there are no genuine disputes of material fact and that respondent is entitled to

judgment as a matter of law. Accordingly,

An appropriate order granting

respondent's motion and decision for

respondent will be entered.